## JOHN H. PRESCOTT v. DAVID BEEBE, *et al.*

SCHOOL LANDS — *When Sold, are Subject to Taxation.* The school lands of this state are, after sale, subject to taxation, although they have neither been patented, nor fully paid for; and tax deeds therefor, if in form, and based upon regular tax proceedings, convey all the interest held by the purchaser from the state.

*Error from Saline District Court.*

INJUNCTION, brought by *Prescott.* The S.W.¼ of sec. 36, in township 14 south, range 3 west, in Saline county, was a part of the lands reserved to the state as "school lands." In January 1869 said tract of land was sold in accordance with the laws of this state for $800, payable in ten equal annual installments, with interest. One George Pearson was the purchaser. Pearson assigned his certificate of purchase to *Prescott.* Said land was assessed in 1869 for the purposes of taxation, and was valued at the full sum of $800. The taxes not being paid, the land was sold at tax-sale in 1870, defendant *A. M. Beebe* being the purchaser at such sale. In 1873, shortly before a tax-deed was due on said tax-sale, *Prescott* commenced this action, making said *A. M. Beebe,* and *David Beebe,* county clerk, defendants, to enjoin and restrain the issuing of a tax-deed to said *A. M. Beebe* on the sale-certificate held by him for said taxes of 1869. Said *A. M. B.* had paid the taxes on said lands for 1870, 1871 and 1872, and such taxes were duly indorsed on the sale-certificate held by him. The application for a temporary injunction was made at the May Term 1873, J. G. S., judge *pro tem.*, presiding. The injunction was refused, and *Prescott* appeals, and and brings the case here on error for review.

*C. A. Hiller,* for plaintiff, contended, first, that ch. 94, Gen. Stat. 1868, "an act to provide for the sale of school lands," is unconstitutional and void, as to § 14 thereof, on the subject of taxation, because the law contains more than one subject,

and one not clearly expressed in its title. 2d, This section, and the tax law, are unconstitutional and void, as impairing the obligations of the contract with the United States regarding the disposal of school lands by the state. 3d, The laws providing for the taxation of this class of lands are unconstitutional and void, in that they do not provide for a *rate* of assessment and taxation, uniform and equal with other property. 4th, If these lands be taxable, the provisions of the law are illegal in providing a remedy by sale and deed of the land itself, whereby a title in fee is created out of a mere contingent interest of the purchaser of school lands; and there is no law for conveying such purchaser's interests. Cooley on Taxation, 4, 131, 476; Const. of Kas., art. 2, § 16; 19 Ark. 360; 6 McLean, 386; 37 Ill. 82; 7 Cranch, 164; 4 Wheat. 316; Cooley Const. Lim. 127, 280; 36 Cal. 220; 5 Kas. 362; 6 Kas. 615; 21 Wis. 688.

*John Foster*, for defendants, against plaintiff's propositions, cited, 6 Kas. 333; Cooley on Taxation, 54, and cases there cited; 69 Penn. St. 138; 7 Kas. 222; 3 Kas. 201, 347; 15 Kas. 154.

The opinion of the court was delivered by

BREWER, J.: The question in this case is, whether school lands, after they have been sold, and before they are fully paid for, are subject to taxation and to sale and conveyance by tax-deed. The plaintiff in error claims that this land cannot be conveyed by a tax-deed, for the following reasons: "First, The law in reference to the sale of school lands, is unconstitutional and void, as to said § 14, on the subject of taxation, because the law contains more than one subject, and one not clearly expressed in its title. Second, This section, and the tax-law, are unconstitutional and void, as impairing the obligations of the contract with the United States regarding the disposal of school lands by this state. Third, The laws providing for the taxation of this class of lands, are unconstitutional and void, in that they do not provide for a

*rate* of assessment and taxation uniform and equal with other property.   Fourth, If these lands be taxable, the provisions of the law are illegal in providing a remedy by sale and deed of the land itself, whereby a title in fee is created out of a mere contingent interest of the purchaser of school lands; and there is no law for conveying such purchaser's interests."

None of these reasons are, we think, sufficient.   Sec. 14 above referred to, (Gen. Stat. 945,) reads, "No purchaser of school lands prior to his obtaining title to the same, shall commit waste upon such land, or take or remove mineral or timber from the same, other than for use upon or improvements of said land.   The lands purchased under this act shall be subject to taxation as other land, and in case of nonpayment of any taxes charged thereon, the said lands may be sold as in other cases; but the purchaser at said sale shall be subject to all the conditions of the bond of the original maker, and of the certificate of purchase."   The title of the act is, "An act to provide for the sale of the school lands;" and the subject-matter of the act is fairly indicated by its title. Surely, a section defining the interests and rights acquired by a purchaser of these lands, is germane to the subject, and within the scope of the title.   The state holds the land free from taxation under that provision of the tax-law which exempts "property belonging exclusively to this state." Gen. Stat. 1021, § 3.   Should not a statute authorizing a sale prescribe whether such a sale carried with it the exemption? and could such a provision be held foreign to the subject-matter ? *Bowman v. Cockrill,* 6 Kas. 333 ; *Comm'rs Sedgwick County v. Bailey,* 13 Kas. 600.   We fail to see wherein the taxing of these lands after they are sold conflicts with the obligations of any contract made with the United States regarding them. Doubtless the lands would sell for more if they were permanently or even temporarily exempted from taxation in the hands of individuals; but when or by what instrument did the state contract to so exempt them?

Nor do we see any section of the law which orders a different *rate* of assessment and taxation in respect to these lands

from that prevailing as to all other lands. The solitary provision is, that "the lands purchased under this act shall be subject to taxation as other lands," etc. The real objection of counsel is exactly the reverse of this, and that is, that this property is assessed and taxed at the same rate as other property, when it ought not to be because the purchaser does not hold the full equitable or legal title. In other words, there is an equitable mortgage on the land belonging to the state, and in the assessment this mortgage ought to be deducted from the value of the land; the purchaser's interest in the land should be taxed, and not the land itself. But in no other case is the amount of an incumbrance deducted from the value of the land in assessing it for taxation. The land is assessed at its full value, and no account is taken of any mortgage or other lien. This may work a hardship on the land-owner, especially when the incumbrances nearly equal the value of the land; but still it furnishes no basis for enjoining the tax. The fact that the state holds the lien, can make no difference. That may render the mortgage exempt from taxation. So it would be if held by a non-resident. And in California it has been decided that taxing mortgages is itself double taxation, and cannot be tolerated, though the contrary is the general current of decision. But none of these questions affect the land-owner. It is one and the same thing to him whether the state, a non-resident, or a resident, owns the mortgage. His land is assessed at the same valuation. He is only interested in this way, and that in common with all others, that the more property there is within the state subject to taxation, the less will be the amount of the tax upon each. Nor does the state school-fund suffer any loss. The holder of the title simply takes the interest of the purchaser. In other words, he buys the land charged with the state's lien. Such is the plain language of the statute. And in this it differs from the case of an ordinary mortgage. There, the tax-deed conveys the land discharged by the lien; here, still charged with it. But this is a matter of which the holder of the tax-

deed may alone complain. He alone is wronged, if anybody. And in this case he is satisfied with and insisting upon his deed. But it is said that it is apparent, from §16 of the act, that the purchaser forfeits the land in case of a failure to make the deferred payments at the stipulated times, and that he therefore has neither a legal nor equitable title, but only a "contingent, conditional and inchoate equity," which according to *Parker v. Winsor*, 5 Kas. 362, *Comm'rs of Douglas Co. v. U. P. Rly. Co.*, 5 Kas. 615, is not subject to taxation. It is unnecessary to inquire what would be the rule independent of §14 above quoted, or whether but for that the interest conveyed would be sufficient to render the land as such taxable. For with it the case stands thus: The constitution only restricts the legislature from taxing property "*used* exclusively for state" and other purposes. That has no application to these lands. They are in no sense "*used* exclusively*" for any of the purposes there named. Taxing the interest passed by a sale of these lands, in no way conflicts with any contract made with the United States, or the terms of any grant by it to the state. Being property within the state, and owned by the state, it is subject to legislative control. The legislature has provided for its sale, and in terms declared that when sold, although not fully paid for, it shall become subject to taxation. The purchaser buys with full notice of this condition. Can he complain if it is enforced? We think not.

The judgment will be affirmed.

All the Justices concurring.