THE BOARD OF COMMISSIONERS OF DICKINSON COUNTY v. E. HOPE BALDWIN.

AGRICULTURAL COLLEGE LANDS, *When Subject to Taxation.* Lands belonging to the Agricultural College, which since the law of 1871 have been sold under a time contract, ( part of the purchase-money being paid,) are, before any right of forfeiture accrues, subject to taxation. The cases of *Parker v. Winsor,* 5 Kas. 362, and *Douglas Co. v. Rld. Co.,* 5 Kas. 615, distinguished.

*Error from Dickinson District Court.*

ACTION by *Baldwin* against the *Board of Commissioners of Dickinson County,* to recover certain taxes. Trial at the May Term, 1882, of the district court, and judgment for plaintiff. The defendant *Board* brings the case here. The facts sufficiently appear in the opinion.

*Mahan & Burton,* for plaintiff in error.

*L. B. Rogers,* and *McClure & Humphrey,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The paramount question in this case is whether the lands described herein were subject to taxation. The facts are these: The lands were agricultural school lands. In 1876 they were sold to Haxtun and Baldwin under a time contract, one-eighth of the purchase-money being paid at the time of purchase, and the balance to be paid in seven annual payments. The first two annual payments were made, then the purchasers defaulted. Haxtun sold out his interest to Baldwin. The sale was thereafter, and in 1880, nominally canceled, the purchase bonds surrendered, a new sale made to Baldwin, new bonds issued, he being credited upon this last purchase with the amount of the principal paid by Haxtun and Baldwin. Upon this sale full payment has been made, and patents issued. The original bonds issued to Haxtun and Baldwin provided that the purchasers should pay all taxes

assessed upon the lands.    Taxes were duly assessed and levied
upon the lands for the years 1877, 1878, 1879, and 1880.
The purchasers not paying these taxes, the lands were sold
for the tax of 1877, and bid in by Mrs. Baldwin, the wife of
one of the purchasers, and the plaintiff in the present action.
A certificate of sale was issued to her, upon which the taxes
of the succeeding years were duly entered.   She now seeks to
recover these taxes from the county, claiming that the lands
were not taxable.    In the case of *Oswalt v. Hallowell*, 15 Kas.
154, the question was presented as to whether Agricultural
College lands, held by an individual under contract of pur-
chase, were subject to taxation, and it was held that they
were.    In that case the sale was made under the law of 1866.
This law authorizing the sale upon time, contained no declar-
ation of forfeiture, and in effect created, upon a time purchase
between the purchaser and the state, simply the relation of
equitable mortgagor and mortgagee.    And we held that under
those circumstances the purchaser was to be treated as the
owner, the land burdened with a mortgage lien in behalf of
the state; and that inasmuch as he was the equitable owner,
the land could not be considered as "belonging exclusively"
to the state, and was therefore not exempt from taxation.    In
1871 the legislature amended the statute in relation to the
sales of agricultural lands by, among other things, adding this
section, (Comp. Laws 1879, p. 85, § 32:)

"Any person failing to pay the purchase-money for any of
the lands purchased from the Kansas State Agricultural Col-
lege, or any installment of the same, shall forfeit all right to
the land from the time of such failure of payment, and the
board of regents shall proceed to eject such person from said
land if in possession."

The purchase in this case was made subsequent to this
amendment.    The cases of *Parker v. Winsor*, 5 Kas. 362,
and *Douglas Co. v. Rld. Co.*, 5 Kas. 615, are cited to show
that the lands are not now taxable until after final payment.
In those cases the facts were, that the general government, as
the owner of certain Indian reservations, had contracted to

sell them under a contract, which provided that if full payment was not made there should be a total and absolute forfeiture. And a majority of this court held, that neither the legal nor the equitable title had passed away from the government, and that therefore the lands, as property of the government, were not subject to taxation. The same absolute right of forfeiture was recognized by this court in the case of *The State v. Emmert*, 19 Kas. 546, as given in the case of the common-school lands by a section similar to that quoted. So that it may be considered that a failure by the purchaser to make any payment at the time it became due, *ipso facto* worked a forfeiture of these lands. The question therefore comes, whether lands held by a contract of purchase from the state, where such contract provides for an absolute forfeiture in case of non-payment, are, prior to any forfeiture, subject to taxation. It may be conceded under the authority of the two cases cited that the lands still belong to the state, but do they "exclusively belong"? For that is the language of the exemption law. The difference between those cases and this is, that in those it was a question of power; here it is simply a question of intention. By the act of admission the lands and property of the United States were not subject to taxation by this state. And as long as lands remained the property of the United States, no matter what contracts they had made in reference to them, it was properly held that they were not taxable. But as to lands belonging to the state, there is no such limitation of the state's power to tax. It could determine absolutely when these lands which it held for a given purpose should become subject to taxation. So long as the land remained the absolute property of the Agricultural College, it was in effect the absolute property of the state. It was exempt from taxation, (*Regents v. Hamilton*, 28 Kas. 376,) and this because it then "exclusively belonged" to the state. But after a sale, even with the right of forfeiture, can it be said to "exclusively belong" to the state? Has not the purchaser a real and substantial interest? Something it is true which he may forfeit, but something of which the state can-

not deprive him, something of which he is the owner and which he can use or sell as he sees fit? Does the state's right of forfeiture destroy all interest which the purchaser acquires by his contract, and make the property "exclusively belonging" to the state? Take an extreme case: Suppose a time contract, every payment but the last made by the purchaser, and he with the money in his pocket ready to make that when it becomes due; although if he fails to make that payment he forfeits the land; does it not seem very like trifling with language to say that prior to such forfeiture, or any right to forfeiture, the land not only belongs but "exclusively belongs" to the state? It seems to us that a good deal of force must be given to the word "exclusively" when used in this connection in the exemption statute, and that by its use the legislature intended to exempt only that property which belongs to the state, and belongs to it free from any contract or interest on the part of an individual; that it intended that at the moment any property or any interest in property of the state was transferred to an individual, such an interest as the state of its own volition could not destroy or take away, that moment the property or interest transferred should become subject to taxation; and this notwithstanding any provisions which it established for the protection of its own interest in the property. In the case of the sale of the common school lands, although the right of forfeiture exists there as here, we held that the land after the sale was subject to taxation in the hands of the purchaser. (*Prescott v. Beebe,* 17 Kas. 320.) It is true in that case the statute expressly provides that the land shall be subject to taxation, and therefore that case is not absolutely decisive of this. But the legislation there considered is significant as indicative of what the legislature intended by the use of the words "exclusively belonging." We have placed no stress upon the intention of the parties to this contract of purchase, as evidenced by the stipulation therein that the purchaser should pay all taxes levied upon the property, nor upon the fact that the purchaser of the tax-sale certicates was the wife of one of the purchasers

from the college, and purchasing the certificate at his instance; for upon general principles we think that lands sold under such contract of purchase cannot, prior to any right of forfeiture, be adjudged to be exclusively belonging to the state. The judgment of the district court will therefore be reversed, and the case remanded with instructions to grant a new trial.

HORTON, C. J., concurring.

VALENTINE, J.: I have great doubts as to the correctness of the decision in this case, but not sufficient doubts to authorize a dissent.   If the title to the property in question had been in the government of the United States, or in the government of the United States and Indians, instead of in the state of Kansas as it is, then I suppose that there could be no doubt that the property would not be taxable.   (*Parker v. Winsor*, 5 Kas. 362; *Douglas County v. Rld. Co.* id., 615; *Baker v. Gee*, 68 U. S. [1 Wall.] 333; *The Kansas Indians*, 72 id. [5 Wall.] 737, overruling the decisions of the supreme court of Kansas in the cases of *Blue Jacket v. Johnson County*, 3 Kas. 299, and *Miami County v. Wan-zop-pe-che*, id. 364; *Railway Co. v. Prescott*, 83 U. S. [16 Wall.] 603, overruling the decision of the supreme court of Kansas in the cases of *K. P. Rly. v. Culp*, and same plaintiff *v. Prescott*, 9 Kas. 38.)

The foregoing decisions hold that the property mentioned in each respectively was not taxable.   The cases were decided upon the theory that no part of the title to the property, legal or equitable, had passed from the United States or from the United States and the Indians, and therefore that there was nothing within the jurisdiction of the state of Kansas subject to state taxation.   They were decided upon the theory that, although an arrangement had been made whereby the title to the property was to pass from the United States, or from the United States and the Indians, at some future time, upon the fulfillment of certain stipulations and conditions, yet that such stipulations and conditions had not been fulfilled, and therefore that no title or estate, legal or equitable, had ever passed from the United States, or from the United States and the

Indians, and therefore that the state of Kansas had no power to tax the property. The case of *Railway Co. v. Prescott,* above cited, is the strongest case in this respect. In that case everything had been done which was necessary to be done, in order to pass the title from the United States and the Indians to the purchaser, except the payment of the cost of selecting and surveying the land and the payment of certain office fees to the register and receiver of the land office; and yet it was held by the supreme court of the United States that no such title or estate had passed from the United States as would authorize the state of Kansas to tax the land.

The case of *Parker v. Winsor,* above cited, certainly does not show that the lands in the present case are not taxable. In that case, no title of any kind had passed from the United States, and no title was to pass and no patent was to be issued until after all the stipulations and conditions of the purchase had been fully complied with and fulfilled; and the land was not to be taxed or to be taxable until after the patent had been issued. (13 U. S. Stat. at Large, 625 to 629; articles 5 and 6, and amendments thereto on page 629.) The stipulations and conditions of purchase had not in that case been complied with or fulfilled when the lands were taxed.

Indeed, all the cases above cited differ from the present case. In the present case, the title to the property in question is held by the state of Kansas, and the state has the unquestioned and unquestionable right to tax the property if it chooses; while in the above-cited cases the title was in the United States and the state had no power to tax the lands. The question in this case is, not whether the state has the power to tax the property, as was the question in the cases above cited, but the question in this case is, whether the state has in fact chosen to exercise such power. Has the state really, by either its constitution or the statutes, authorized the taxation of these lands? Has the state by either its constitution or statutes, shown any intention to tax them? This is really the vital question in this case. Upon this question, as before stated, I have grave doubts; but still, as before stated,

I have not sufficient doubts to authorize a dissent. In the cases above cited, the real question was, whether the state had the power to tax the lands in question. It will therefore be seen that those cases do not control in the present case.