LOGAN, RAND & CO. v. THE BOARD OF COMMISSIONERS OF CLARK COUNTY.

1. INDIAN LANDS — *Taxation.* Congress having full control over the lands in Kansas known as the "Osage trust and diminished reserve lands," may make them subject to state taxation upon such conditions as are deemed proper, not in conflict with the provisions of the constitution and laws of the state.

2. ——— *Rights of Purchaser at Tax Sale.* Under the acts of congress of August 11, 1876, and May 28, 1880, relating to the Osage trust and diminished reserve lands in Kansas, such lands are subject to taxation, according to the laws of the state, after a sale thereof by the United States to an individual, after the payment of the first install-ment of the purchase price. If the original purchaser pays all the installments of the purchase price and obtains his patent, but makes

default in the payment of his taxes, the tax purchaser of such land may obtain a tax deed as provided by the statute; but if the original purchaser makes default in any installment of the purchase price, and also permits the land to go to tax sale, the tax purchaser or his or her representative may, upon the day fixed for the public sale of the forfeited land, and after such default has become final, pay so much of said purchase price as may remain unpaid, and shall thereupon be entitled to receive a patent for the same as though he had made due settlement thereon. 1 Supp. Rev. Stat. U. S., 1874–1881, pp. 237, 529.

*Error from Clark District Court.*

PRIOR to March 1, 1887, the lands involved in this controversy, which are all situated in Clark county, were a part of the Osage Indian diminished reserve lands, and are a part of the lands mentioned in the acts of congress of August 11, 1876, and May 28, 1880, found in the first volume of the supplement to the United States Revised Statutes, pages 236 and 528 (1874–1881). They were sold by the United States to individuals, and one-fourth of the purchase money has been paid. These lands were taxed for 1887 by the county officers, and on September 4, 1888, they were sold for the taxes, and the plaintiffs are now the owners and holders of the tax-sale certificates. These lands have never been redeemed from such tax sales, and, believing that the tax sales were invalid, Logan, Rand & Co., brought this action, on the 18th of January, 1892, against the board of commissioners of Clark county to recover $233.45, the amount of the taxes paid by them, with interest thereon. (Gen. Stat. of 1889, ¶ 6999.) Section 7 of the act of congress of August 11, 1876, providing for the sale of the Osage ceded lands in Kansas, reads:

"That nothing in this act shall be so construed as to prevent said lands from being taxed under the laws of the state of Kansas, as other lands are or may be taxed in said state, from and after the time the first payment is made on said land, according to the provisions of this act." 1 Supp. U. S. Rev. Stat. 237. (1874–1881.)

Section 4 of the act of congress of May 28, 1880, being

"An act for the relief of settlers upon the Osage trust and diminished reserve lands in Kansas," provides:

"After the payment of the first installment as hereinafter provided for, such lands shall be subject to taxation according to the laws of the state of Kansas, as other lands are or may be in said state: *Provided*, That no sale of any such lands for taxes shall operate to deprive the United States of said lands, or any part of the purchase price thereof; but if default be made in any installment of the purchase price, as aforesaid, such tax-sale purchaser, or his or her legal representatives, may, upon the day fixed for the public sale, and after such default has become final, under the foregoing provisions, pay so much of said purchase price as may remain unpaid, and shall thereupon be entitled to receive a patent for the same as though he had made due settlement thereon.: *And provided further*, That nothing in this act shall be so construed as to deprive or impair the right of the settler of the right of redemption under the revenue laws of the state of Kansas." 1 Supp. U. S. Rev. Stat. 529. (1874–1881.)

The board of county commissioners demurred to the plaintiffs' petition, and the court below sustained the demurrer, and the plaintiffs, as plaintiffs in error, bring the case to this court.

*Bone & Ratcliff*, and *Valentine, Harkness & Godard*, for plaintiffs in error:

Upon the real facts, the sole question involved in this controversy is, whether the tax sale made in Clark county on September 4, 1888, of the lands in controversy, was of sufficient validity, with a subsequent compliance with the tax laws, and without any redemption from the sale, to authorize tax deeds to be afterward issued in pursuance of the sale and the statutes, conveying the lands to the tax-sale purchaser or to his assignee, or to whoever may be the legal holder of the tax-sale certificate. Involved in this question, however, are other questions, the principal of which is, whether the government of the United States had, at the time of the taxation and sale of these lands, and afterward, any such interest therein as would prevent a sale and conveyance of the same for taxes

imposed by state authority. If this question should be answered in the affirmative, then the plaintiffs may recover in this action; but if answered otherwise they cannot recover.

It will be seen that the government's interest in the land in question is exempt from all state taxation; and that it is so exempt also follows from the universal current of authority upon this subject. *Comm'rs of Douglas Co. v. U. P. Rly. Co.*, 5 Kas. 615; *Gulf Rld. Co. v. Morris*, 13 id. 302; *McGoon v. Scales*, 9 Wall. 23; *Railway Co. v. Prescott*, 16 id. 603; *Railway Co. v. McShane*, 22 id. 444; *Railroad Co. v. Traill Co.*, 115 U. S. 601, 606, et seq., 6 Sup. Ct. Rep. 201; *Wis. Cent. Rly. Co. v. Price*, 133 U. S. 496, 10 Sup. Ct. Rep. 341.

When our present tax law was enacted, in March, 1876, all the foregoing decisions except the last two had been rendered, and the legislature of course knew that the property was exempt from taxation under state authority, and therefore did not attempt to provide for taxing it. The government of the United States owned the legal title and the greater interest in the property in question. Neither the government's interest nor the land itself, including such interest, could be taxed under the authority of the state unless the government itself permitted its interest to be taxed. The government has not permitted the same to be done. The government at most has only permitted the purchaser's interest to be taxed. Such an interest can be taxed only under the provisions of the state laws, and there is no state law providing for the taxation of any such interest; therefore any taxation of the land or any interest therein would be illegal. But the land was taxed as land, including all interests therein. This was illegal, even if the purchaser's interest could be taxed, for the reason, first, that it was unjustly taxed at the value of the land, and not at the value of the purchaser's interest; and second, that it was taxed in violation of § 1, art. 11, of the constitution, which provides that "the legislature shall provide for a uniform and equal rate of assessment and taxation." The sale on such a tax was void, first, for the reason that no part of the land

was taxable; second, for the reason that the government's interest therein was not taxable; third, for the reason that it was taxed upon an excessive valuation; and fourth, that it was taxed in violation of § 1, article 11, of the constitution. No valid tax deed could be issued upon such sale, for the reason, first, that the sale itself was void for the reasons above stated; and second, for the reason that the government's interest in the land could not be conveyed by a tax deed. There is no authority under our statutes, except where the state owns an interest in the land, for issuing a tax deed for anything less than the entire, absolute and unqualified title to the land. Therefore the tax-sale purchaser, or his assignee, not being able to procure a tax deed for what he purchased, is entitled to have the taxes paid by him, and all interest thereon, refunded, under ¶ 6999 of the General Statutes of 1889.

*Ben. E. Page,* and *H. C. Mayse,* for defendant in error:

In the cases relied upon by plaintiffs in error, *Railway Co. v. Prescott,* 16 Wall. 603, *Railway Co. v. McShane,* 22 id. 444, and *Railroad Co. v. Traill Co.,* 115 U. S. 600, the power or authority to tax had not been granted by congress, and the same difference between those cases and this exists as was said by this court to exist between the cases of *Parker v. Winsor,* 5 Kas. 362, and *Comm'rs of Douglas Co. v. U. P. Rly. Co.,* 5 id. 615, and the case of *Comm'rs of Dickinson Co. v. Baldwin,* 29 id. 538. Upon the questions here presented, there is no reason apparent why this court should follow the case of *Railway Co. v. McShane,* supra, and the other cases which the court followed in that case, and which counsel for plaintiffs in error rely upon. The underlying and governing principles are different.

The decisions of this court leave no question of the right to tax school lands and agricultural college lands, after contract of purchase, although, in case the holder of the tax-sale certificates in each instance should fail to take advantage of the provisions of law for completing the terms of the purchase, he could not obtain a tax deed that would "vest in

him an absolute estate in fee simple." *Oswalt v. Hallowell,* 15 Kas. 154; *Prescott v. Beebe,* 17 id. 320; *Comm'rs of Dickinson Co. v. Baldwin,* 29 id. 538.

This case, then, seems to resolve itself into a few questions, none of which by themselves seem difficult of determination. First, has the state the power to tax these lands? And by this question we mean, to tax the lands as lands, and as they were attempted to be taxed in this case. The grant to the state by the act of congress is of the power to tax these lands "as other lands are or may be taxed in the state." And in order to make this grant effective, every necessary provision is made, that the power may be as ample as it is in the cases of school and other state lands. Second, are existing laws of such character as will enable the state to tax these lands? All property is subject to taxation unless expressly exempt; no exemption exists in the case of these lands. The statute requires the taxing of lands purchased from the United States after the 1st day of March next after the entering of such lands. These lands were entered prior to the 1st day of March, 1887. Although a different method of entering lands was provided by congress after the passage of our present tax laws, and the purchaser was permitted to pay for them in installments, as had not hitherto been the case, yet when they were entered they would become subject to taxation under existing laws. Third, is a tax levied upon these lands invalid because the lands were assessed for taxation at their full value? In all such cases in this state lands are so taxed, and the right to so tax lands which had been purchased from the state and not fully paid for has been uniformly upheld by this court.

The opinion of the court was delivered by

HORTON, C. J.: The only question presented in this case is, whether the lands known as the "Osage trust and diminished reserve lands" in this state are taxable after sale thereof by the United States to a purchaser paying one-fourth of the price of the land at the time of his purchase, and executing

his notes to the United States for the remainder, in three annual payments, with interest thereon at the rate of 5 per cent. per annum. (1 Supp. Rev. Stat. U. S., 1874–1881, pp. 237, 529 ) By the act of admission of Kansas into the union, the lands of the United States are not subject to taxation by this state. (Act of Admission, § 3, subdiv. 6; Comp. Laws of 1862, p. 84; Gen. Stat. of 1889, ¶ 277; *Comm'rs of Douglas Co. v. Railway Co.,* 5 Kas. 615; *Railroad Co. v. Morris,* 13 id. 302; *McGoon v. Scales,* 9 Wall. 23; *Railway Co. v. Prescott,* 16 id. 603.) It must be conceded that, if congress had not expressly provided that the lands referred to "shall be [after the first payment is made thereon] subject to taxation according to the laws of the state of Kansas, as other lands are or may be taxed in said state," the lands in dispute would not be taxable under any of the provisions of the tax laws. (*Parker v. Winsor,* 5 Kas. 362; *Comm'rs of Douglas Co. v. Railway Co.,* 5 id. 615.) But congress, having full control over the Osage trust lands, may make them, we think, subject to state taxation upon such conditions as are

1. Indian lands— deemed proper, not in conflict with the constitu-
   taxation. tion and the laws of the state. Congress having given the power to the state to tax these lands, the questions presented in this case have been, we think, substantially settled by this court in the cases of *Oswalt v. Hallowell,* 15 Kas. 154; *Prescott v. Beebe,* 17 id. 320; *Comm'rs of Dickinson Co. v. Baldwin,* 29 id. 538; *McMahon v. Welsh,* 11 id. 280.

It is contended that, although the acts of congress intended to, and did, grant permission to the state to tax the lands, we have no statute to carry out the terms of these acts. In support of this contention, it is said that, under our statutes, it is the land itself in all cases, and not any mere equitable or inchoate interest in the land, that is taxed, or is sold at a tax sale or is conveyed by a tax deed; and again, that the sale in the present case is void, for the reason that it is based upon taxes levied in violation of § 1, art. 11, of the state constitution, which ordains, among other things, that "the legislature shall provide for a uniform and equal rate of assessment and

taxation." It was decided in *McMahon v. Welsh*, 11 Kas. 280, "that where the United States holds the legal title and an individual holds the equitable, the land is taxable." (*Stone v. Young*, 5 Kas. 229.) Prior to the law of 1879, if a purchaser of school lands failed to pay either interest or principal of the purchase money at the time the same became due, such failure *ipso facto* worked a forfeiture, and the interest of the purchaser in the land instantly and absolutely ceased. (*The State v. Emmert*, 19 Kas. 546; *Ewing v. Baldwin*, 24 id. 82.) Yet, in 1876, in the case of the sale of school lands, although the right of forfeiture existed therein, we held that the land after the sale was subject to taxation in the hands of the purchaser. (*Prescott v. Beebe*, 17 Kas. 320.) It was ruled in the last case, that "the school lands of this state are, after sale, subject to taxation, although they have never been patented nor fully paid for; and tax deeds therefor, if in form and based upon regular tax proceedings, convey all the interest held by the purchaser from the state." Under the rule thus stated, so, in this case, it may be remarked that the Osage trust and diminished reserve lands in Kansas, under the acts of congress and the statutes of this state, are, after sale, subject to taxation, although they have neither been patented nor fully paid for; and tax deeds therefor, if in form and based upon regular tax proceedings, convey all the interest held by the purchaser from the United States.

The argument against the taxation of the land because the purchaser has only paid a part of the purchase price and given his notes for the balance is answered by this court in *Prescott v. Beebe*, supra. BREWER, J., speaking for the court in that case, said:

"Nor do we see any section of the law which orders a different rate of assessment and taxation in respect to these lands from that prevailing as to all other lands. The solitary provision is, that 'the lands purchased under this act shall be subject to taxation as other lands,' etc. The real objection of counsel is exactly the reverse of this, and that is, that this property is assessed and taxed at the same rate as other property, when it ought not to be, because the purchaser does not

hold the full equitable or legal title. In other words, there is an equitable mortgage on the land belonging to the state, and in the assessment this mortgage ought to be deducted from the value of the land; the purchaser's interest in the land should be taxed, and not the land itself. But in no other case is the amount of an incumbrance deducted from the value of the land in assessing it for taxation. The land is assessed at its full value, and no account is taken of any mortgage or other lien. This may work a hardship on the landowner, especially when the incumbrances nearly equal the value of the land; but still it furnishes no basis for enjoining the tax."

As congress has expressly provided that the Osage trust lands in this state shall be subject to taxation according to the laws of the state, and has further provided, that in case any purchaser makes default in the payment of any installment, the tax-sale purchaser may be substituted in his place by paying "the balance of the purchase price remaining unpaid," we perceive no serious difficulty in fully enforcing the federal and state statutes concerning the taxation of these lands.

2. Rights of purchaser at tax sale.

After the sale of the lands by the United States to a purchaser, the property cannot be said "to belong exclusively to the United States," if the original purchaser or his substitute (the tax purchaser) is able and ready to pay the balance of the purchase price. A purchaser at tax sale buys the land charged with the lien of the United States. This is a matter of which he has notice when he buys. The original purchaser also buys with full notice of the condition that, if he does not pay the taxes on the land, a tax purchaser may displace him, under the acts of congress, as owner of the premises, when he makes default in his payments. In that way the tax-sale purchaser may obtain full title for the lands sold at tax sale, the same as the tax purchaser of school lands of the state not paid for, where the original purchaser is in default to the United States. If the original purchaser goes on and makes payment to the United States for his land, the tax purchaser

48—51 KAS.

obtains his tax deed like any other tax purchaser. In either way the tax purchaser is fully protected.

We have considered all the other objections urged against the taxation of the lands, but we do not think such objections tenable.

The judgment of the district court will be affirmed.

All the Justices concurring.