EBENEZER Z. RYAN, surviving Assignee, &c., Plaintiff in Error, *v.* GALLATIN COUNTY, Defendant in Error.

### ERROR TO GALLATIN.

The assignees of the Bank of Illinois are bound, while the assets of that bank remain in their hands for administration, to discharge the taxes assessed upon it.

The assignees of said bank are a *quasi* corporation, with powers coextensive with the duties imposed upon them, and may sue and be sued.

Under the assignment of the assets of the bank, in pursuance of the act of 1845, there was no obligation to pay the bonus to the State, in lieu of taxation, fixed by the charter of the bank, nor was such bonus paid, and the assets became taxable as other property.

It is only the property which the State owns, that is exempt from taxation, not that in the avails of which the State may or may not ultimately be entitled to share.

The remedy by distress for the collection of taxes on personal property given by the statute is not necessarily exclusive; and an action of debt is an appropriate remedy to enforce such a liability, whenever a proceeding by distress would be ineffectual.

THE opinion of the court embodies the agreed case upon which this cause was submitted to the circuit court for decision.

The decision of this cause was pronounced by DENNING, Judge, at November term, 1850, of the Gallatin Circuit Court.

W. THOMAS, for plaintiff in error.

W. B. SCATES and S. S. MARSHALL, for defendant in error.

TRUMBULL, J.    This was an action of debt, brought by the county of Gallatin against Caldwell and Ryan, assignees of the Bank of Illinois, to recover the taxes due said county, on money loaned; the declaration alleging, that the defendants had no personal property whereon to levy said taxes.

The defendants demurred to the declaration, and the cause was submitted to the court on the following agreement: " It is agreed between the attorneys for the plaintiff and defendants, that the following facts be received in the argument of this case, as if the same were pleaded and proven. First, that the assessor of Gallatin county for the year 1846, returned his assessment for the year 1845, which had been omitted by the assessor for that year, also the assessment for the year 1846, against the Bank of Illinois, at the sum of $260,000 for each year, as money loaned by the said bank. At a special term, held in January, 1846, of the county commissioners' court of Gallatin county, said court made the levy rate of taxation at four mills on each dollar's worth of property assessment for the year 1845. At the March term, 1846, the county commissioners' court proceeded to levy a pauper tax, for said year of 1846, of twenty cents on each $100 worth of property, and forty cents on each $100, for county purposes, and fifteen cents on each $100 worth of property, as a road tax, for road purposes, all for 1846.

" At a special term of said county commissioners' court, held on the 5th of January, 1847, the said court proceeded to levy, and did levy, the rate of taxes for said year of 1847, at four mills on the dollar's worth of property, for county purposes ; and the assessor of said county returned his assessment for the year 1847, of the sum of $260,000, as money owned by said Bank of Illinois, and assigned to defendants, loaned at interest for that year.

" Second. That the collector of Gallatin county for the years 1845, 1846, and 1847, demanded of the said defendants the said taxes.

" Third. That the defendants refused to pay the said taxes, denying their liability for such taxes, and still refuse to pay.

" Fourth. That the defendants have not, since the assignment to them on the 10th of April, 1845, paid into the State treasury any bonus under the law of 1835, although such bonus was paid to 1843.

" Fifth. That the defendants waive any demand by the collector for personal property.

" Sixth. That the assets of the Bank of Illinois passed into liquidation under the act of 25th February, 1843.

" Seventh. That the assets of the said bank were subsequently, on the 10th of April, 1845, assigned to Albert G. Caldwell, Ebenezer Z. Ryan, John J. Hardin, (who has since deceased, and has been succeeded by David A. Smith,) and Samuel Dunlap, under act of 28th of February, 1845.

"Eighth. That the amounts assessed as money loaned in the assessments above mentioned were, at the times mentioned, the balances of outstanding debts due said Bank of Illinois, at Shawneetown, for money loaned prior to the year 1843, and were assigned to these defendants.

"Ninth. That the said debts were proven before the county court, at the said times, to have been worth not more than fifty cents on the dollar.

"Tenth. That the State, under an act amendatory of the charter of said bank, hath been a stockholder in said bank to the amount of $1,000,000, and still is a stockholder to the amount of $

"Eleventh. That said outstanding debt of said bank was, and is payable, in the paper of said bank, and said paper was, at the said times, and still is, not worth more than fifty cents on the dollar.

"It is also further agreed, that all the acts, public or private, of this State, in relation to the county of Gallatin, the powers of the county commissioners' court of said county, and the revenue of this State, and of the said county, also all laws, public or private, in relation to the Bank of Illinois, the liquidation or assignment thereof, applicable to any question of law or fact, which may arise in this case, shall be taken and received, as if specially pleaded or proven before the court.

"It is also further agreed, that the foregoing facts shall be considered, in connection with the writ, declaration, and issue joined herein, as one record, and be submitted to the court as an agreed case, with liberty to the defendants to make any questions, which go to the jurisdiction of the court, the parties to this suit, the right of action in the plaintiff, the cause of action sued on, the adjustment of the liability of the defendants, and all other questions which the defendants may choose to make on this record, not of a merely technical character. The same liberty is likewise reserved to the plaintiff."

The circuit court overruled the demurrer, and gave judgment on the agreement for $2,015, debt, and $362, damages and costs, against the defendants.

The points relied on for a reversal of the judgment will be noticed in the order they have been made.

First. It is insisted, that if there is any legal liability to pay taxes upon the property in question, it rests on the stockholders and creditors of the bank, who own its property, and not on their agents or assignees.

It is true, the assignees, under the acts of the legislature, hold the property in trust for the creditors and stockholders;

Ryan *v.* Gallatin County.

but the creditors and stockholders have no such ownership of the property, as to render them personally liable for the taxes upon it; and if they had, it would be impracticable to collect the taxes from them. Many of them reside beyond the limits of the State; and there is no means of ascertaining who they are, or to what proportion of the assets of the bank each is entitled. Unless, therefore, the assignees can be charged with the tax, the money loaned by the bank, and now due, the assignees will be exempt from the statutory provision making money loaned subject to taxation, and will not possess an immunity not extended to loans made by private persons. There is no reason for such a distinction, and unless required by positive law, it should not be made. The legal title to the assets of the bank is, by statute, vested in the assignees; they are charged with the liquidation of its affairs; authorized to bring suits in their own names for its debts; and bound, while the property remains in their hands for administration, to discharge the taxes assessed upon it.

Second. It is insisted, that the assignees are not suable in a court of law.

This action was commenced on the 31st day of May, 1849. By the original act to put the Bank of Illinois into liquidation, in force February 25, 1843, the charter of the bank, for the purpose of winding up its affairs, was extended till the 4th of March, 1847.

By the supplemental act appointing assignees, and placing the affairs of the bank in their hands, approved February 28, 1845, the assignees were allowed till February 28, 1849, to make final settlement of the affairs of the bank; which was nearly two years beyond the time to which the charter of the bank had been extended.

By the second section of an act for the relief of the assignees of the Bank of Illinois, and to extend the time for the liquidation of the affairs of said bank, approved February 10, 1849, it is provided, " that on all debts, dues, and causes of action that have hitherto accrued to the president, directors, and company of said bank, the assignees of said bank, or their successors in office, shall have power and authority to sue for and recover the same in their own names, in manner and form following, that is to say : Albert G. Caldwell and Ebenezer Z. Ryan, and their successors in office, shall have such power and authority touching such debts, dues, and causes of action as have accrued to, or been contracted with said bank at Shawneetown or Lawrenceville." A subsequent part of the same section confers like authority on the other assignees, in refer-

ence to the debts and causes of action accruing at other points where the bank had branches, and makes provision for bringing suits affecting real estate.

Taking these various acts of the legislature together, and it is clear that the assignees, in order to the discharge of the duties imposed upon them, must have had the right, in some form, to bring suits. Whether they could bring suits · in their own names after the expiration of the charter of the bank, in 1847, and before the passage of the act of 1849, expressly giving them that authority, it is not material now to inquire. They clearly had that right after the passage of the act of 1849, which was before the institution of this suit; and it is not to be presumed that the legislature intended to give them this power against the debtors to the bank, and leave its creditors wholly at their mercy. It is reasonable to suppose that there must have been many unliquidated claims against the bank, growing out of its numerous contracts, which could not be fixed and ascertained without a resort to the courts of law; and it could never have been designed by the legislature to deprive such parties of all remedy. The right to sue and be sued is, as a general rule, reciprocal; and when the legislature, either directly or by necessary implication, confers the one, in cases where there is nothing in the character of either of the parties to exempt them from suit, it ought to be considered as conferring the other also. The assignees, though not possessing all the powers incident to a corporation, may be considered, under the various acts of the legislature, as *quasi* corporations, with powers coextensive with the duties imposed upon them. Inhabitants of Fourth School District in Rumford *v.* Wood, 13 Mass. 193.

The third and fourth points made by plaintiff in error may be considered together, and they resolve themselves into this, — that by the charter of the bank, acts 1835, 22, the bank is required to pay into the State treasury, annually, one half per cent. on the capital stock actually paid into said bank, to be used for State purposes, in consideration whereof it is declared that the bank shall be exempt from further taxation. The obligation to pay this bonus, it is insisted, still exists, and that thereby the bank is released from all further taxation. It is admitted by the agreement, that the bonus of one half per cent. has not been paid into the treasury, since the bank went into liquidation, in 1843. By the liquidation act, it was confined in its operations to winding up its affairs, and expressly prohibited from doing any act usually done by banks. From that time, and more especially from the time when all its assets, real and personal, were transferred to assignees, under an assignment made in

pursuance of the act of 1845, there was no obligation to pay the bonus, and the assets which had belonged to the bank became taxable as other property.

The fifth point is, that the State is a stockholder in the bank, and therefore the owner of the property taxed in such a sense as to bring it within that provision of the statute which exempts from taxation the real and personal property of the State.

The State was not in any sense the owner of the property taxed, but the title to the same was either in the bank or the assignees. It is only property which the State owns that is exempt from taxation, not that in the avails of which she may, or may not, ultimately be entitled to share.

The sixth and seventh points have already been disposed of in considering the second.

The eighth objection is, that no assumpsit or undertaking to pay the taxes by the assignees can be implied, they not being personally liable for them ; and in connection with this point may be considered another, which is, that the statute has made ample provision for the collection of taxes on personal property by distress, and therefore no reason exists for resorting to this action. It is not pretended that the assignees are personally liable for the taxes in question, nor is it sought to make them thus liable. The object is to make the property held by them in trust for others contribute its just proportion towards the expenses of government.

The agreed case and the whole record show, that the suit was brought to collect the taxes from the defendants in their capacity of assignees, and not as individuals. They are described as assignees in the declaration, and the judgment is against " the defendants," which must be understood to mean the defendants in the character given them in the previous parts of the record.

The remedy by distress is not necessarily exclusive. It is a summary proceeding, and will ordinarily be resorted to out of choice by collectors ; but there may be cases where it would be ineffectual, as in this instance, where there was no personal property to distrain. As has been already shown, a legal liability existed against the assignees to pay the taxes, and an action of debt is an appropriate remedy to enforce such a liability, whenever the ordinary mode of proceeding by distress would be ineffectual. Under the execution issued on the judgment, any property of the assignees as such, real or personal, may be seized as in other cases of execution.

Let the judgment be affirmed.

*Judgment affirmed.*