## Robert C. McChesney *et al.*

### *v.*

## The People *ex rel.* Johnson.

*Filed at Ottawa May 14, 1881.*

1. Evidence—*plat which is not a copy of original.* On an application for judgment against lots for a special assessment thereon for park purposes, the owner offered in evidence a plat which was not claimed to be a copy of the original, which original and the record thereof had been destroyed by fire, but so far as it showed the relative position of the property to the park, it was claimed to be a copy of the original. The court excluded the same: *Held,* that there was no error in rejecting it as evidence. It was not competent for any other purpose than to show the relative position of the lots to the park, and that appeared as well by the description given of the property as it would have been shown by the plat.

2. Interest—*statute fixing rate—uniformity.* Fixing the rate of interest an installment of a special assessment shall bear, where the same is made payable at stated periods in the future, is in no sense "regulating the rate of interest on money," within the meaning of the constitutional prohibition against the passage of any local or special statutes on that subject.

3. Special assessments—*on property held by corporation in trust.* Land dedicated by the owner as a park, to the trustees of a town, "for the benefit of the owners of lots fronting on the same," "to be ornamented and improved in such manner as a majority of such owners shall desire," is neither a public park, nor the property of the town. It remains private property, and it is subject to taxation and special assessments under the general laws. A municipal corporation can not hold private property in trust for private persons, so as to exempt it from the imposition of taxes or special assessments under general laws.

APPEAL from the County Court of Cook county ; the Hon. MASON B. LOOMIS, Judge, presiding.

Messrs. HARRISON & WHITEHEAD, for the appellants.

Mr. JESSE B. BARTON, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an application to the county court, by William J. Johnson, treasurer and *ex officio* collector of revenues for the county of Cook, for judgment for the 8th installment of special assessment levied and assessed by the South Park Commissioners against the lands and lots described in the collector's report of delinquent lands and lots.   At the same term of court at which the application was made, Robert C. McChesney and J. H. Dunham appeared, and by their written answer represented to the court they were the " owners, or beneficially interested " in certain lots, describing them, and which are embraced in the collector's report, and stated a number of specific objections to the entry of any judgment against such lots.   On the hearing, the court overruled the several objections, and rendered judgment against the lots described, for the 8th installment of such special assessment, interest, penalties and costs.   Objectors bring the case to this court on appeal.

On the trial in the court below, to support the issues on behalf of the People, relator introduced the notice of such application, advertised list and notice of sale, which were admitted by objectors as correct in form and according to law.   The other portions of the record were also admitted to be in due form of law.   Unless, therefore, the objections, or some of them, interposed to the entering of judgment against the lots in controversy can be sustained, the judgment of the county court must be affirmed.

One of the objectors, Dunham, was the owner of the land at the time a subdivision and plat were made of it, in 1869.

The original plat and the record of it were destroyed in 1871, by fire. The court, at the trial, excluded a plat which objectors offered in evidence, and that decision is assigned for error. It was not claimed it was a copy of the original plat. So far as it related to the relative position of the property it was claimed to be a copy of the original plat, and the object of introducing it was to show the position of the lots with respect to the park designated thereon. The fact it was not a copy of the original plat, would justify the decision of the court in rejecting it as such copy. It might have been introduced as a plat to show the relative position of the property as to the park, but it is a matter of no consequence, one way or the other. The relative position of the property is quite as well understood by the description given as it could have been from the plat, had it been admitted in evidence. It was not competent for any other purpose.

Regulating the rate of interest on money is one of the subjects in regard to which the General Assembly, by section 22, art. 4, of the constitution, is forbidden to pass any local or special statute. It is insisted that clause of section 3 of the Park act, which declares, "all installments shall bear interest at the rate of seven per cent per annum, from the time on or before which the payment of the first one is to be made," is a special statute "regulating the rate of interest on money," and is, therefore, unconstitutional. This is not a correct reading of that section of the statute. Fixing the rate of interest an installment of a special assessment shall bear, where the same is made payable at stated periods in the future, is in no sense "regulating the rate of interest on money." It is simply a mode of raising the amount required for the proposed public improvement, and no doubt the assessment would have been correspondingly higher had no interest been imposed on all deferred payments. A failure to pay taxes when due may subject the party owing the same to the payment of interest thereon, in the nature of penalty, and the imposition of interest in such cases has been held valid.

*The People* v. *Smith,* 94 Ill. 226.   Such statutes bear no like-
ness to statutes "regulating the rate of interest on money,"
and contravene no provision of the constitution in that
respect.

The objection most elaborated on the argument, and on
which counsel seem to place most reliance for a reversal of
the judgment, is, that "a portion of said lands is a public
park, and not liable to be assessed for said South Park assess-
ment." The lots against which judgment was rendered are a
part of a subdivision of a tract of land, as we understand the
record, situated within the corporate limits of the village of
Hyde Park. What "portion" of this property is a "public
park" is not set forth in any specification, but it appears
from the evidence the "north 139 feet of the south 284 feet
of J. H. Dunham's subdivision" of a certain tract of land,
is known in that locality as "Madison Avenue Park."
Abutting on this piece of ground are resident lots, some of
them built upon and occupied. The position assumed is, the
piece of land known as "Madison Avenue Park" is a
"public park," and is, therefore, exempt from the assessment
made upon it by the South Park Commissioners, upon the
principle one municipal corporation may not tax or specially
assess the property of another municipality. The proposi-
tion of law stated is not controverted, but it is denied the
land is the property of a municipal corporation. It will be
necessary to look into the record to ascertain the fact.

As we have seen, the original plat of Dunham's subdivision,
and the record of it, were destroyed by fire. Secondary
proof shows this piece of land, by writing on the plat, was
dedicated to the town of Hyde Park. What follows purports
to be the language of the dedication, as given by Dunham
himself, who made it, viz: "This place is dedicated to the
trustees of the town of Hyde Park as a park, by the name of
Madison Avenue Park, for the benefit of the owners of lots
fronting the same, and is to be ornamented and improved in
such manner as the majority of such owners shall desire, each

owner to have a voice in such improvement in proportion to the number of feet he shall own fronting or abutting on the park." There is also secondary evidence the board of trustees of the town of Hyde Park approved the dedication by a committee, who reported their action to the board, which was approved by them. Since that time, the witness states, the officers of Hyde Park, whose business it is to attend to such matters, have exercised an authority and control over "Madison Avenue Park," and have made repairs on sidewalks repeatedly. That was all that was done by the corporate authorities of the town or village in the matter of accepting the trust created by the dedication. It does appear, however, the park has been improved in some respects,—trees have been planted in it, and a drive-way has been constructed on each side of it, which is used by the lot owners and the public as a highway. There are other approaches to the lots from an alley in the rear, and perhaps to some of them from Fifty-first street. When the season of the year will permit, picnics are held in the park as upon public grounds. By whom the improvements in the park were made, except the repairs made on the sidewalks, the record does not disclose.

Some discussion has been had on the question whether a municipal corporation, without enabling legislation, can hold property in trust for the use of private persons, or for uses other than corporate purposes; but it will not be necessary to consider that phase of the case, as the decision may be placed on a broader ground, affecting directly the merits of the controversy, viz: this piece of land is neither a public park nor the property of the village of Hyde Park. It was dedicated as "Madison Avenue Park," to the "trustees of the town of Hyde Park, for the benefit of the owners of lots fronting on the same." It "is to be ornamented and improved in such manner as a majority of such owners shall desire." The trustees of the town of Hyde Park never assumed any obligation to do that work, and if it is done at all it must be done

by the owners of lots abutting on the park. Neither the village officers nor the public can have any authority to direct what improvements shall be made. That right is reserved to the lot owners for whose benefit the park is. There was no attempt made to dedicate the land to the public for park or other purposes. It is plain, if the corporate authorities of the village accepted the dedication it must have been on the terms proposed, and that was for the benefit of owners of adjacent lots fronting on the park. No other dedication of this land was ever made or pretended to be made. It remains as distinctively private property as before the dedication, and is held as such for the benefit of a limited number of persons, designated as a class. That a municipal corporation can not hold private property in trust for private persons, so as to exempt it from the imposition of taxes or special assessments under general laws, is a proposition so plain it need not be elaborated. All private property, whether held in trust or otherwise, is subject to taxation for State and municipal purposes, and no device will be tolerated to relieve it from its just proportion of public burdens.

The objectors describe themselves as the " owners, or beneficially interested " in this very property. If it were a " public park," or the property of the village, it is apprehended they would have no such interest in it as would give them any right to contest the assessment made upon it. But being property of private persons, although held by the village for their benefit, it is subject to special assessments for public improvements, as is other private property in the vicinity.

The judgment will be affirmed.

*Judgment affirmed.*