COMSTOCK, Respondent, vs. BOYLE and others, imp., Appellants.

*November 17—December 6, 1910.*

*Wills: Construction: Bequests for soldiers' orphans: State as trustee: Right to reimburse itself: Title to land: Exemption from taxation.*

1. A bequest made in 1865 "to the various asylums or homes that have been formed or may be formed within a year throughout the loyal states for the orphans by the late war for the restoration of the Union," together with an intimation of the testa-

tor's wish that for a time the interest only be used "and that the bequest be so managed as to give the orphans, as they become of age, a sum of money to fit them out in life and thus gradually extinguish the fund," made the inmates of the institutions, and not the institutions themselves, beneficiaries, and evinced a clear intent that not only the interest but the corpus of the fund should go to the orphans.

2. So, also, a subsequent bequest to the trustees of the Wisconsin Orphans' Home "for the benefit of the children," constituted the orphans the beneficiaries.

3. The funds above mentioned, or a residue thereof, being held by the state in trust, the fact that it had been engaged in a similar charity and had spent large sums of its own money for the care and maintenance of the same orphans would not entitle it to reimburse itself out of said funds.

4. Where, out of funds so held in trust by the state, land was purchased and title thereto taken by the state "in trust," such land was not "owned exclusively" by the state, within the meaning of subd. 2, sec. 1038, Stats. (1898), so as to be exempt from taxation.

5. Exclusive ownership, within the meaning of said statute, is ownership free from any kind of legal or equitable interest in any one else.

APPEAL from a judgment of the circuit court for Fond du Lac county: A. H. REID, Judge. *Affirmed.*

In 1865 Horatio Ward, an American banker residing in London, England, made a bequest "to the various asylums or homes that have been formed or may be formed within a year throughout the loyal states for the orphans by the late war for the restoration of the Union." Among other provisions his will contained this:

"I judge that the interest only, for a time, will be used, and that the bequest be so managed as to give the orphans, as they become of age, a sum of money to fit them out in life and thus gradually extinguish the fund—this course would be in exact accord with my wishes."

In 1867 the testator died. By an act of the legislature, approved March 31, 1866, the state of Wisconsin established the "Soldiers' Orphans' Home of Wisconsin," and in 1871 it received from the Ward bequest the sum of $25,554.79.

Some considerable time after Mr. Ward's death, Miss Caroline E. Smith, formerly of Waukesha, died in Chicago, leaving by her will $2,000 to the trustees of the Wisconsin Orphans' Home for the benefit of the children. In 1872 this bequest was paid to the trustees and deposited with the Ward fund, and thereafter a separate account was kept in the books of the state treasurer under the head of the "Ward and Smith Bequests Fund." It is still so kept.

The purpose of the testator, Ward, that the fund should be extinguished by distribution among the orphans to fit them out in life, was partly executed in 1874 when the trustees issued to each of them a certificate of $45. But, owing to the fact that all did not call for their certificates, there was quite a balance left in 1877, and a second series of certificates for $10 each was issued. This distribution also failed to completely exhaust the fund, and in 1887 there was still a balance left. The Home was closed in 1875, and pursuant to ch. 306, Laws of 1875, the real estate was transferred to the regents of the State University, but the trustees still continued to act, and in 1887 it came to their attention that one of the beneficiaries was in destitute circumstances. Their action relative thereto is stated as follows in their final report:

"During 1887 it came to the knowledge of the board that one of the boys from the Home, named Charles A. Randall, residing in the city of Fond du Lac, who had a wife and two children, was, on account of poor health, in a state of destitution, and that, unless help was given him, he would probably become dependent on public charity. This boy suffered while at the Home a very severe illness, barely escaping death, in consequence of which his physical development was arrested. He was dwarfed in stature and not strong. In competition in the field of labor, with strong, full-grown men, he was crowded to the wall. He was industrious and fond of gardening—was somewhat skilled in the art. So from the Ward and Smith fund we appropriated a sum sufficient to purchase within the corporate limits of Fond du Lac three acres of ground fenced, for a truck garden. One of the mem-

bers of the board purchased the lumber and superintended the erection on the ground of a warm, comfortable shanty house and small shed barn, costing $160; we also purchased for him a cow and put him in possession of the premises and told him that he could occupy them for as long a time as he wished without cost, except taxes. The whole establishment costs $700. But that there might be no temptation presented to him to mortgage or sell the place we placed the title in trust in the state of Wisconsin. For a few years he prospered and was happy, cultivating his truck garden. But subsequently he was taken sick and died; and his widow with her children abandoned the place in order to go to her people who lived in the northwestern part of the state."

This land in question was taxed in 1887, but it does not appear whether the tax was paid or redeemed. It was again taxed in 1888, sold at the tax sale of 1889 to the county, and redeemed from the county by C. K. Pier April 4, 1892. It was not taxed in 1889, 1890, nor 1891, but in 1892 it was trebly assessed for the years 1890, 1891, and 1892, and the tax levied and the property sold therefor at the tax sale of 1893 to Kate Pier. In 1896 the tax certificate was, on the petition of Kate Pier setting forth that the property belonged to the state of Wisconsin and was not subject to taxation, canceled by order of the county board for that reason. The land was, nevertheless, again taxed in the years 1893, 1894, 1895, and 1896, and sold at the annual tax sales succeeding the same years, to George Radford, and thereupon, in due time, tax deeds based upon said tax sales were issued to said Radford and by him recorded. The land was taxed successively in 1897, 1898, 1899, and 1900, and the taxes were paid by George Radford. In 1901 the property was assessed to the state of Wisconsin as owner, but not sold. In 1902 and 1903 it was not assessed. By quitclaim deed dated March 17, 1904, George Radford conveyed this property to the plaintiff.

On April 25, 1887, when one Mary A. Hamilton deeded this land in question to the state of Wisconsin in trust, she was the owner in fee thereof. Sec. 1, ch. 375, Laws of 1895,

authorized Mr. C. K. Pier, the secretary of the board of trustees, to sell the land and convey all the title held by the state and pay the net proceeds of the sale into the state treasury to the credit of the account known as the Ward and Smith fund.    Sec. 2 provided:

"The state treasurer shall thereupon transfer the balance in the Ward and Smith fund to the general fund, and it shall be his duty to pay therefrom any and all certificates issued by said trustees and held by those who were formerly inmates of the Wisconsin Soldiers' Orphans' Home, as same are presented by those entitled to receive payment on same, not exceeding, however, in the aggregate, the amount so transferred from the Ward and Smith account to the general fund."

The act then provided for the approval of the final report of the trustees and abolished the board.    Mr. Pier having died without making a sale, the commissioners of public lands were, by ch. 71, Laws of 1899, authorized to sell the land, and on May 24, 1904, they sold it to the defendant *John T. Boyle* and a patent was issued to him.    He immediately entered into possession of it, and plaintiff brought an action of ejectment.    A jury was waived, and the court found that plaintiff was the owner in fee and entitled to the possession thereof. From judgment entered accordingly the defendants appealed.

For the appellants there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

For the respondent there was a brief by *H. E. Swett,* and oral argument by *John J. Wood, Jr.*

VINJE, J.    It is conceded by the defendants that if the land was taxable when the taxes on which the tax deeds are based were assessed against it, then plaintiff's tax title is valid. The sole question for determination, therefore, is whether or not the land was taxable in the years 1893, 1894, 1895, and 1896.    The defendants claimed that the land belonged to the state exclusively, and that under subd. 2, sec. 1038, Stats.

(1898), which provides that property "owned exclusively by the United States or by this state" shall be exempt from taxation, it was not taxable.

It is evident that it was the intent of the testator, Ward, to make the inmates of the institutions, and not the institutions themselves, the beneficiaries of his gift. That portion of his will which reads, "I judge that the interest only, for a time, will be used, and that the bequest be so managed as to give the orphans, as they become of age, a sum of money to fit them out in life and thus gradually extinguish the fund—this course would be in exact accord with my wishes," evinces a clear intent that not only the interest but also the corpus of the gift should go to the orphans. The inmates of institutions managed by private parties as well as of those managed by the states were to share in the gift, for the bequest was "to the various asylums or homes that have been formed or may be formed within a year *throughout* the loyal states for the orphans by the late war for the restoration of the Union." The bequest of Miss Smith was to the trustees of the Wisconsin Orphans' Home *for the benefit of the children.* So it must be held that both bequests constituted the orphans the beneficiaries. That this was recognized by the trustees and the state is evident from the fact that the Ward and Smith Bequests Fund was kept separate from all other funds. The trust relation was also clearly recognized when the balance of the fund was transferred to the general fund, for it was provided by the legislature that the state treasurer should pay out of the general fund any and all certificates issued by the trustees not exceeding in the aggregate the amount so transferred from the Ward and Smith account to the general fund. This provision was tantamount to saying that the balance of the Ward and Smith account belonged to the orphans, but would be transferred to the general fund and paid to them out of that whenever a proper demand was made.

But the defendants argue that the evidence shows the state

spent large sums of its own money for the care and maintenance of the orphans, and it is therefore entitled to reimburse itself out of their fund, conceding it belonged to them, and that if it did so the whole trust fund would be exhausted. The evident answer to this is that the fact the state was engaged in a similar charity would not entitle it to reimburse itself for money spent therein out of other funds held in trust by it. Nor has it sought to so reimburse itself. It has, as above stated, always recognized that it held the fund in trust for the orphans, even after the moneys were turned into the general fund, for it provided for a repayment to them upon presentation of proper vouchers to the whole extent of the fund.

It is undisputed that the $700 used in the purchase of the land in question was taken from the Ward and Smith Bequests Fund, and as the state was not the owner, but only the trustee thereof, it is evident that the fact that it used a portion of the fund for the purchase of real estate (contrary perhaps to the provisions of the bequests) and took title to itself "in trust" could not make it the owner, much less the exclusive owner, of the land so purchased. Exclusive ownership is necessarily ownership free from any kind of legal or equitable interest in any one else. *Merrill R. & L. Co. v. Merrill,* 119 Wis. 249, 96 N. W. 686; *Dickinson Co. v. Baldwin,* 29 Kan. 538. But here the beneficial, equitable ownership of the land was in the *cestuis que trustent,* and it is immaterial whether Randall alone was the *cestui que trust* or whether all the surviving orphans were the *cestuis que trustent.* In either event the beneficial ownership of the land was in a private person or persons. The fact that the state held the title in trust would not exempt it from taxation. *St. Louis v. Wenneker,* 145 Mo. 230, 47 S. W. 105; *McChesney v. People ex rel. Johnson,* 99 Ill. 216; *Dickinson Co. v. Baldwin,* 29 Kan. 538; *Mitchelville v. Sup'rs,* 64 Iowa, 554, 21 N. W. 31; 1 Cooley, Taxation (3d ed.) 266. The court, therefore, prop-

erly found that plaintiff was the owner in fee of the land and entitled to judgment.

*By the Court.*—Judgment affirmed.

TIMLIN, J., took no part.