THE PEOPLE ex rel. G. Stanley Olmsted, County Collector, Appellant, vs. THE UNIVERSITY OF ILLINOIS, Appellee.

*Opinion filed December 21, 1927—Rehearing denied Feb. 9, 1928.*

1. TAXES—*property of University of Illinois belongs to State.* While the State is virtually a trustee of the property and funds of the University of Illinois for the use of the people, the property of the university, though held by the board of trustees, belongs to the State, as the State retains the power of selecting the trustees, and may, through other agents than the trustees, sell and dispose of the property of the institution or change its charter, as the legislature may direct.

2. SAME—*when property given in trust for State university is not exempt as belonging to State.* A farm given by deed of trust to the trustees of the University of Illinois, "to constitute a trust fund for all time" for the benefit of certain students of the university and for agricultural experimentation, to be managed by the heads of certain departments of the university, is not exempt from taxation as property of the State of Illinois as it is not State property, where the deed expressly provides that the property shall never be disposed of except as provided in the deed.

3. SAME—*provisions of constitution for exempting property are not self-executing.* Provisions of the constitution permitting the legislature to exempt, by general law, certain property from taxation are not self-executing, and exemptions can exist only by the provisions of acts of the legislature.

4. SAME—*exemption statute must be construed strictly.* In determining whether property comes within a statutory exemption the act must be construed strictly and all doubts must be resolved against the exemption.

5. SAME—*objector must depend on the written objections filed.* In a county collector's proceeding for judgment and sale for delinquent taxes the issues which arise are limited to the written objections filed and the points thereby raised, the presumption being that no other objections to the tax exist.

6. SAME—*property given in trust for University of Illinois is not exempt as devoted to "school and religious purposes."* A farm given in trust to the trustees of the University of Illinois for the benefit of certain students of the university and for agricultural

experimentation is not exempt from taxation under clause 2 of section 2 of the Revenue act, exempting property used exclusively for "school and religious purposes." (*People* v. *Northwestern College,* 322 Ill. 120, followed.)

APPEAL from the County Court of Vermilion county; the Hon. WILLIAM T. HENDERSON, Judge, presiding.

ELMER O. FURROW, State's Attorney, and LEWMAN & CARTER, (JOHN H. LEWMAN, and O. W. LONGENECKER, of counsel,) for appellant.

OLIVER A. HARKER, SVEINBJORN JOHNSON, and AR-THUR R. HALL, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from the judgment of the county court of Vermilion county sustaining the objections of the trustees of the University of Illinois to the application of the county treasurer for sale of certain lands for delinquent taxes. The objections filed are based upon two grounds: First, that the property belongs to the State; and second, that it is used exclusively for school purposes. The county court sustained the objections of the appellee, and the collector brings the cause here for review.

It appears from the record that on March 13, 1923, Joseph Carter and June P. Carter, his wife, executed a deed of trust to the trustees of the University of Illinois conveying approximately 350 acres of land in Vermilion county, "to constitute a trust fund for all time for a two-fold educational purpose: (*a*) For the education of young men and young women as hereinafter set forth; and (*b*) for the improvement of the agriculture of Illinois by ex-ample and by experiment as hereinafter set forth." The land consists of two farms. The deed of trust provided that the land should be held by the trustees of the University of Illinois and their successors in office "in perpetuity, solely for the educational purposes hereinafter specified and de-

clared by the grantors." The deed contains four clauses under the head of "Inducements for trust." These clauses set out that the grantors having by mutual consent decided to make a disposition of part of their joint property which they had by industry collected, and the University of Illinois seeming to them to be an ideal institution for the training of young men and young women, the grantors desired to give the real estate to the University of Illinois and to put the net income of the same as a trust property forever under the control of the board of trustees of the University of Illinois and their successors in office for the uses and purposes set forth in the deed. The deed also contains a declaration of trust, consisting of nineteen clauses, designed to carry out the purposes of the grantors as hereinbefore mentioned. In substance the third to ninth clauses, both included, provide that the two separate farms shall forever remain intact and be under the direction and control of the board of trustees of the University of Illinois and their successors in office, and that said board shall delegate to a trust committee, consisting of the president of the university, dean of the college of agriculture, dean of the college of engineering and dean of the department of home economics, the management and control of the farms. These committeemen are to receive no compensation for their services, except that the dean of the agricultural college, or someone representing him, shall be re-paid the expense of making necessary trips to the farms for inspection and supervision. The committee is required to manage the trust farms in the best manner to get the largest permanent income during the centuries and to keep the farms and their appurtenances in good condition. It is directed that all of the income from the farms, after paying the necessary expenses and for repairs, shall go to the trust fund and be used for the purposes declared in the trust, which are disclosed to be, "to aid worthy people, while students of the University of Illinois, in the manner hereinafter provided."

Clause 11 authorizes the trustees to loan, out of the net income and trust estate, a sum of money, not exceeding $500 per annum, to any student who has been for at least one year a student in the University of Illinois and who is studying chiefly in any of the mechanical, engineering, agricultural, natural history, chemical or home economics courses, whose future seems promising and whose habits and character are above reproach. These loans are to be made upon such terms and security as the trustees may prescribe and are not to exceed $2000 to any one student. Clause 12 requires that the trustees collect interest on such loans and the principal when due, and that all money so collected shall be turned in to the fund, to be again used as loans to students. Clause 13 provides that the judge of the circuit court of Champaign county shall be the arbitrator of any disputes concerning the trust estate, and that court is authorized and requested to see that the trust is faithfully administered, and if at any time any member of the trust committee refuses to serve or for any reason can not serve as a member of the committee, the court shall appoint in his place some other member of the faculty from the same college or department of the University of Illinois. Clause 14 provides that the board of trustees and their successors in office, by whatever name they may be known, shall be and continue to be the grantee in the deed. Clause 16 provides that should conditions arise making the carrying out of the terms of the trust contrary to or incompatible with public policy or the welfare of the State, then, in case the circuit court of Champaign county so decides, it may, upon application of the grantee and request of the committee, order the property sold and the proceeds re-invested in other good real estate of equal value, to be held for the same purposes, and if this cannot be done, then to be invested in some safe and stable income-producing securities, the net income of which shall be controlled and used by the grantee in the same manner as pro-

vided for the income from the farms. Clause 17 provides that in case the net income from the trust becomes at some time in the remote future so unreasonably large as to make it impracticable to use all of the trust income for loans to students, then, in case the circuit court of Champaign county should, on petition of the grantee, with the consent of the committee, so find, it may order such surplus income to be used by the grantee for the purpose of agricultural research work and home economics research work through the University of Illinois. Clause 19 provides: "Subject to the foregoing provisions in paragraphs 16 and 17, this grant is made on the express condition that said corporate body to whom said real estate is herein conveyed shall never sell nor convey to other parties the real estate herein granted and conveyed to it, but that said corporate body shall hold said lands as a public trust forever for the educational purposes hereinabove described." The appellee formally accepted this trust by resolution.

By section 3 of article 9 of the constitution it is provided that "the property of the State, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law." Section 2 of the Revenue act, in prescribing what property shall be exempt from taxation, provides by its second clause as follows: "All property used exclusively for religious purposes, or used exclusively for school and religious purposes or for orphanages and not leased or otherwise used with a view to profit." The fifth clause exempts "all property of every kind belonging to the State of Illinois." These are the provisions of the Revenue law which appellee contends are applicable. Two questions therefore arise and will be treated in the following order: First, does the property conveyed by the deed of trust in this case belong

to the State of Illinois? Second, is it used exclusively for school and religious purposes and not leased or otherwise used with a view to profit? An affirmative answer to either of these questions sustains the exemption, but if both must be answered in the negative the property is not exempt for the reasons raised in the objections filed to the county treasurer's application for sale.

Does this property belong to the State? The University of Illinois was founded by an act of the legislature approved February 28, 1867, as the Illinois Industrial University. In 1885 its name was changed to the University of Illinois. It is maintained by interest from its permanent endowment fund arising from grants of land from the United States and by appropriations made by the General Assembly. It is governed by a board of trustees elected by the people. Though the State has created a body corporate to control the University of Illinois, yet the State retains the power of selecting trustees, and may through other agents than the trustees sell and dispose of the property of the institution or change its charter as the legislature may direct. The property of the University of Illinois, though held by the board of trustees, belongs to the State. (*People* v. *Board of Trustees,* 283 Ill. 494; *Spalding* v. *People,* 172 id. 40; *Board of Trustees* v. *Champaign County,* 76 id. 184; *Thomas* v. *Industrial University,* 71 id. 310.) While the State through its board of trustees is virtually a trustee of the property and funds of the university for the use of the people, it nevertheless has power to resume the fund and to use it for the purposes designated. *City of Chicago* v. *People,* 80 Ill. 384.

In *Ryan* v. *Gallatin County,* 14 Ill. 78, taxes had been assessed against certain loans of the Bank of Illinois, and on application for judgment therefor it was objected that the funds were exempt from taxation because the State was a stockholder in the bank, and therefore the owner of the property taxed, in such sense as to bring it within the ex-

emption statute.   It appeared from the record that the State held stock in this bank to the extent, at one time, of a million dollars.   It was held that the State was not in any sense the owner of the property taxed but the title was in either the bank or the assignees thereof.   This court there said: "It is only property which the State owns that is exempt from taxation—not that in the avails of which she may or may not ultimately be entitled to share."

In *McChesney* v. *People,* 99 Ill. 216, the question arose whether certain property was exempt from taxation as public property.   It appeared that certain property had been dedicated in the village of Hyde Park as a park, "for the benefit of the owners of lots fronting on the same."   It was there held that a municipal corporation cannot hold private property in trust for private persons so as to exempt it from the imposition of taxes; that all private property, whether held in trust or otherwise, is subject to taxation for State and municipal purposes, and that since the property dedicated as a park was to be held for the benefit of certain persons and not the public, the village could not be said to own it free from taxation.   To the same effect is *People* v. *Ricketts,* 248 Ill. 428.

In *City of Chicago* v. *People, supra,* the question arose whether certain lands held in the name of the city were exempt from taxation.   It was there said that while the General Assembly had created corporate bodies, such as school districts, to control funds arising from school property, yet the General Assembly had not parted with the power to control the fund in any manner it chose for the use of the schools; that it could, if disposed, deprive those to whom its management is entrusted of such control and entrust it to others; that the manner or agency employed in the handling of the funds or property is at all times in the control of the State; that the State has power to resume the fund and use it for the purposes designated, and

that this being so, the State is the real owner of such funds and property and they were exempt from taxation.

In *Board of Trustees* v. *Champaign County, supra,* this question arose on the assessment of taxes against certain lands in Champaign county conveyed to the university. It was held that the State retains the power of appointing the trustees of the university, and has power, through agents other than trustees, to sell and dispose of the property of the institution, or may at pleasure amend, or even repeal, the charter as public policy or the interest of the university may require; that the trustees derive all their powers from the State and act for and on behalf of the State, and that the real estate involved, though conveyed to the trustees as a corporate body, is under the entire control of the State when disposed to exercise that control, and was therefore property of the State.

In *Comstock* v. *Boyle,* 144 Wis. 180, 128 N. W. 870, one Ward, a philanthropist, made a bequest to various asylums that had been formed or might within a year be formed for the care of orphans of the Civil War, and directed that the bequest be so managed as to give the orphans, as they became of age, a sum of money to fit them out in life. The question arose whether certain property which the State purchased for one of its former wards, taking title in the State in trust, and which property was later abandoned by the family of the ward and through assessment of taxes and sales therefore became vested in the plaintiff in the case, was at the time such taxes were assessed exempt from taxation. The determination of that question depended on whether at that time the property belonged to the State. It was there held that the State, in the administration of the fund, occupied the position of trustee, only; that the orphans of the various asylums, being the beneficiaries, were interested in the fund, and the same was not, therefore, exclusively owned by the State so as to be free from taxation. To the same effect are *St. Louis*

v. *Wenneker,* 145 Mo. 230, 47 S. W. 105; *Mitchelville* v. *Supervisors,* 64 Iowa, 554, 21 N. W. 31; *Dickinson County* v. *Baldwin,* 29 Kan. 538; Cooley on Taxation,—3d ed.— sec. 266.) It was also there held that ownership by the State, to exempt property from taxation, must be exclusive, and that such ownership must necessarily be free from any kind of legal or equitable interest in anyone else. To the same effect is *Merrill Railway and Lighting Co.* v. *City of Merrill,* 119 Wis. 249, 96 N. W. 686, where the question involved was whether certain lands were owned by the city of Merrill so as to exempt them from taxation.

From these authorities the rule is to be deduced that ownership of property in the State, such as exempts that property from taxation, must be exclusive and free from any kind of legal or equitable interest in anyone else. If the State holds property as trustee, not for the public but for the benefit of specified private persons, such property cannot be said to belong to the State so as to exempt it from taxation. It seems clear that the State does not have exclusive ownership of the property involved here. It may not sell it except under the terms, in the manner and for the purposes indicated in the trust. It may not exercise complete control over it even for the purposes set forth in the deed of trust, since that deed specifies the management of the farms shall be by a committee consisting of members of the faculty of the university who are not a part of the board of trustees, and not, therefore, a part of the body corporate of the university. It further appears in the application of this test, that, acting as trustee, the State, through the board of trustees of the university, does not hold the property in trust for the public, but that a certain class of specified private persons are the only ones to receive beneficial interest therefrom. The State cannot, therefore, be said to own the property to the exclusion of any legal or equitable interest in anyone else. Nor can it be said that the property belongs to the State by reason of

328—25

the provisions of clause 17 of the articles of trust permitting the use of surplus income, on order of the circuit court, for the purpose of conducting agricultural or home economics research work. It cannot be doubted that this is a purpose for which the university may receive and own property, but it appears, first, that the application of such surplus income is not left to the exclusive control of the university but can be so used only on order of the circuit court; and second, it is not at all probable that in carrying out this trust there will ever be such a surplus. There are 350 acres of this land. From facts of common knowledge it is readily determined that the net income of this land can scarcely be said, with any certainty, to be sufficient to permit a surplus after providing for the specified worthy students in a university of the size of the appellee, which enrolls thousands of students each year in the courses specified in the deed. This provision is contingent and its application so very uncertain that it cannot be said to bring the property within the rule. Even though there should be such a surplus, the State in receiving the same for the purposes of the university would be receiving but a part of the benefit of the fund, as the balance, and by far the larger part, would still be devoted to the benefit of private persons. We are of the opinion, therefore, that this property cannot be held exempt from taxation by reason of belonging to the State.

We come, then, to the second question, whether this property is used exclusively for school and religious purposes. Under the constitution of 1848 exemption was permitted of "the property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for school, religious and charitable purposes." Section 3 of article 9 of the constitution of 1870 permits the legislature to exempt from taxation, by general law, property used exclusively for school purposes. While this is so, the constitution is not

self-executing in these provisions. Exemptions exist only by the provisions of acts of the legislature. Taxation is the rule and exemptions are the exception. The statute under which appellee claims exemption here, provides that there shall be exempted from taxation "all property used exclusively for religious purposes, or used exclusively for school and religious purposes  *  *  *  and not leased or otherwise used with a view to profit." It has long been settled in this State that in determining whether property comes within the exemption provided by the statute the act must be construed strictly and all doubts must be resolved against the exemption. (*People* v. *Withers Home,* 312 Ill. 136; *First Congregational Church* v. *Board of Review,* 254 id. 220; *People* v. *Bennett Medical College,* 248 id. 608; *Bloomington Cemetery Ass'n* v. *People,* 170 id. 377.) In cases of this character the issues which arise are limited to the written objections filed and the points thereby raised, the presumption being that no other objections to the tax exist. (*People* v. *Northwestern College,* 322 Ill. 120; *Indiana, Decatur and Western Railway Co.* v. *People,* 201 id. 351; *Chicago and Alton Railroad Co.* v. *People,* 155 id. 276.) The issue on this phase of the case, as raised by the reliance of appellee on clause 2 of section 2 of the Revenue act, is therefore whether the land sought to be taxed is used exclusively for school and religious purposes. To bring the property under this exemption statute it must be clearly seen that it is used for the purposes therein specified,—*i. e.,* for religious purposes or for school and religious purposes. In *People* v. *Northwestern College, supra,* this question was clearly and definitely settled. It was there said: "Manifestly the General Assembly, by the provision relied upon by plaintiff in error, intended to exempt from taxation property used exclusively for school and religious purposes. One of the two purposes is not enough. The exemption can only be claimed under the provision invoked when the property is used exclusively for both purposes."

It is not the contention of appellee here that the University of Illinois is a place of public worship or a school for religious instruction. It is a matter of which this court will take judicial notice by reason of the statutes, that this school is a university for education in the arts and sciences, conferring degrees therein, and is non-sectarian. While it may be said that the students are expected to attend devotional exercises, religious instruction is not a part of the curriculum. This property cannot be said to be exempt from taxation as property belonging to the State or as property not so owned but used exclusively for school and religious purposes. The county court therefore erred in sustaining appellee's objections.

The judgment of the county court is reversed and the cause remanded, with directions to overrule the objections.

*Reversed and remanded, with directions.*