(No. 22477.—

The People *ex rel.* Fred R. Lloyd, County Collector, Appellee, *vs.* The University of Illinois, Appellant.

*Opinion filed June 20, 1934—Rehearing denied October 5, 1934.*

OLIVER A. HARKER, SVEINBJORN JOHNSON, and HALL
& HOLADAY, (ARTHUR R. HALL, of counsel,) for appellant.

OLIVER D. MANN, State's Attorney, and BREMER & LONGENECKER, (O. W. LONGENECKER, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

The University of Illinois by this appeal challenges the validity of a judgment of the county court of Vermilion county overruling its objections to applications for sale of certain lands for delinquent taxes for the years 1926 to 1932, both inclusive. The lands involved are the same as those referred to in *People* v. *University of Illinois,* 328 Ill. 377. That case involved the question of liability of the university for real estate taxes for the year 1925, and the facts with reference to the title and the purposes for which the property was conveyed to the university sufficiently appear from the opinion in that case and need not be repeated here. There it appeared that the university had claimed exemption from taxes on this property for the year 1925 upon two grounds: First, that the property belonged to the State; and second, that it was used exclusively for school purposes. The county court had entered judgment sustaining these objections and the claim of exemption, but this court took the opposite view and reversed the judgment and remanded the cause to the county court, with directions to overrule the objections.

Preliminary to other questions we must dispose of the claim by appellee that the judgment in the former case is conclusive against the university respecting taxes for subsequent years, under the doctrine of *res adjudicata,* as to all claims of exemption which were or could have been raised in that case. Where a former decision is relied upon as an absolute bar it is essential that there be identity of subject matter and cause of action, but where the later proceeding is not based upon the same cause of action as the earlier one and rests upon a different claim or demand,

the judgment in the prior action operates as an estoppel only as to the precise matters in issue or points controverted upon the determination of which the earlier finding or judgment was reached. (*Chicago Theological Seminary v. People,* 189 Ill. 439, and cases there cited.) Here the former judgment claimed as an adjudication or estoppel related solely to taxes for the year 1925, whereas the present proceeding involves taxes for subsequent years. It is well settled that a cause of action for taxes for one year is not the same as or identical with a cause of action for taxes for subsequent years. (*Chicago Theological Seminary v. People, supra,* at pp. 444, 445; *Keokuk and Western Railroad v. Missouri,* 152 U. S. 301, 314, 315.) For this reason the judgment for the 1925 taxes is binding upon appellant not as to all questions which might have been raised by it in that proceeding in support of its claim of exemption, but only as to the two above mentioned points actually raised and decided in the former case.

It is claimed, however, that, in addition to the two specific points thus urged, the university in its written objections in the county court prayed generally that the property be held to be exempt from taxation, and that the university is therefore now precluded from raising any points in support of its claim of exemption which were then available to it. It is urged that this position is supported by the fact that no written pleadings were required to raise the issue in cases of that kind. It is clear, however, from the former decision of this court in *People v. University of Illinois, supra,* at p. 387, that the issues raised in that case were strictly limited to the two points above mentioned. As previously stated, one of the claims of exemption in that case was that the property "was being used exclusively for school purposes," but that precise question was not decided. Although section 3 of article 9 of the constitution authorized the legislature to exempt from taxation any property used for school, religious and charitable purposes,

we held in the former case that this provision was not self-executing; that in view of the fact the statute at that time (clause 2 of section 2 of the Revenue act) provided for exemption of "property used exclusively for religious purposes, or used exclusively for school and religious purposes or for orphanages and not leased or otherwise used with a view to profit," it was essential that the property be used exclusively for religious or for both school and religious purposes, and that property used only for school purposes was not exempted by the statute, and that, accordingly, the issue was as to whether the property in question was used exclusively for "school and religious" purposes. Our holding was that the property was not used for both such purposes, and we therefore denied the claim of exemption. It is evident, therefore, that the university is bound by the decision in the former case only as to the two claims of exemption which were there raised and passed upon. Accordingly we hold, as decided in the former case, that the property in question is not owned by the State and that it is not used exclusively for school and religious purposes.

On behalf of appellant it is nevertheless contended that the property belongs to the State, and we are referred to an amendment made in 1928 to the fifth clause of section 2 of the Revenue act. Until 1928 this section exempted, among other things, "Fifth—All property of every kind belonging to the State of Illinois." In *People* v. *University of Illinois, supra,* after full consideration, we decided that the property in question did not belong to the State. Within a few months after that decision the legislature amended the fifth clause of section 2 of the Revenue act to read as follows:

"Fifth—All property of every kind belonging to the State of Illinois. Within the intent and meaning hereof, all property whatsoever, real and personal, whether held in trust or absolutely, heretofore or hereafter transferred,

donated to or held by the State, or any public educational institution thereof, for the encouragement of education, shall be deemed property of the State of Illinois."

This amendment was apparently adopted for the purpose of escaping the effect of our decision in the former case. We agree with the contention of appellee that the purported amendment can have no such effect. Section 3 of article 9 of the constitution provides that "the property of the State * * * may be exempted from taxation." It is beyond the power of the legislature to add to or broaden the exemptions which the constitution thus permits it to provide. *People's Loan and Homestead Ass'n* v. *Keith,* 153 Ill. 609; *Supreme Lodge* v. *Board of Review,* 223 id. 54; *Consolidated Coal Co.* v. *Miller,* 236 id. 149; *People* v. *Deutsche Gemeinde,* 249 id. 132; *First Congregational Church* v. *Board of Review,* 254 id. 220; *People* v. *Walters Chapter D. A. R.* 311 id. 304.

The fifth clause of section 2 of the Revenue act as it was before the purported amendment of 1928, followed strictly the language of the constitution above quoted. Our holding in *People* v. *University of Illinois, supra,* that the property in question did not belong to the State within the meaning of the act, was as well a holding that it was not property of the State within the meaning of the constitutional provision authorizing exemptions. The attempted amendment in 1928 of the fifth clause of section 2 of the Revenue act is therefore invalid in so far as it seeks to extend the exemption to apply to property not actually "belonging to the State," as those words were construed by this court in *People* v. *University of Illinois, supra.* It is for the courts, and not for the legislature, to determine whether particular property belongs to or is owned by the State and is therefore exempt from taxation. The legislative function is limited to specifying, within the strict limits fixed by the constitution, whether certain property therein mentioned is to be exempt, and in doing so the

legislature has no authority to decide the judicial question here involved—*i. e.,* whether certain property is or is not owned by the State. So far as the amendment of 1928 purports to decide that question it is unconstitutional and invalid.

In view of the foregoing it is clear that appellant is in no position to assert at this time that the property in question is exempt from taxation on the theory that it is owned by the State or is otherwise exempt under the fifth clause of section 2 of the Revenue act, or that it is used exclusively for school and religious purposes, but may assert any and all other claims available to it on this record.

Appellant contends, further, that the property is exempt from taxation for the years 1926 to 1932, inclusive, upon the following grounds: (1) That it is the property of a school, the University of Illinois, and is not leased or otherwise used with a view to profit; (2) that it is property used exclusively for school purposes and not leased or otherwise used with a view to profit; (3) that it is the property of a beneficent and charitable organization, the university, and is actually and exclusively used for such charitable or beneficent purposes and not leased or otherwise used with a view to profit; (4) that it is used exclusively by a society, the university, for agricultural purposes and not for pecuniary profit. These contentions will be taken up in their order.

The mere fact that property is owned by a school and is not leased or otherwise used with a view to profit is not sufficient to exempt it from taxation unless it is used exclusively for school purposes. (*People* v. *North Central College,* 336 Ill. 263; *School of Domestic Arts* v. *Carr,* 322 id. 562.) The record clearly shows that the lands involved here were used for farming purposes, tilled by tenant farmers for cash or grain rent, and therefore not used exclusively for school purposes. The contention first above listed therefore cannot be sustained.

The second contention cannot be sustained because it does not clearly appear from the evidence that the property is used exclusively for school purposes and is not leased or otherwise used with a view to profit. It is the settled rule that in determining whether property is included within a statutory exemption the act must be strictly construed. The burden of proof is upon the one claiming the exemption and all doubts must be resolved against the claim of exemption. (*People* v. *University of Illinois, supra,* and authorities there cited.) A resume of the evidence also fails to sustain the contention of the university that the lands are not leased or otherwise used with a view to profit. The deed of trust conveying the lands to the university directs that they shall be managed in the best way to make the largest permanent income and so that they will be of the most benefit, educationally and financially. It refers to the trust farms as "tenant farms," and provides that the necessary cost of managing and maintaining them be paid out of the gross earnings. It refers to the "net proceeds" and "net returns" and evinces a design by the grantors that they be operated as model tenant farms and that they be managed and developed and the fertility of the soil replenished as an example of good husbandry to the neighborhood, with net profits from their operation to be placed in a trust fund from which loans might be available to certain types of students in the university. The evidence shows that the farms were conducted much in the same manner as privately owned farms; that tenants plowed the ground, sowed and planted the grain, took care of the livestock and shared in the sale of produce, livestock and grain, usually on a fifty-fifty basis. In other words, the proof shows that the farms were conducted for income—for profit—and not exclusively for educational, charitable or philanthropic purposes. While the university's share of the net proceeds went into the student loan fund and became available for loans (not charitable gifts)

to needy students, yet the lands certainly are not primarily or exclusively so devoted. The exemption ordinarily extends only to such property of the institution as is actually and exclusively used for its proper and legitimate educational purposes. (*Presbyterian Theological Seminary* v. *People,* 101 Ill. 578; *Northwestern University* v. *People,* 80 id. 333.) The use to which the lands are exclusively put is the determining factor—not how a part or all of the net income is used. The context of the conveyance also fails to bear out the claim for tax exemption, as it is difficult to understand how farm land which is exempted from its just share of the tax burden can well be considered by its neighbors as a model, when the children of its tenants might attend schools supported without any tax contributions from its owners and when its tax-free products can thereby undersell the neighborhood market. The evidence shows that the annual net profit was between $1500 and $3500, and that the land was leased to tenants and managed as a means of obtaining revenue to lend to students— a worthy purpose but not one which entitles the land to tax exemption. If the farms were not operated "for profit," as that term is generally understood, there would be nothing with which to create a student loan fund. Whether the student loan fund resulting from the net profits of operating these farms is taxable is not involved in this appeal.

Much stress is laid by appellant upon the alleged nonprofit feature of the student loan fund as entitling this farm land to tax exemption under the rule established in *Monticello Seminary* v. *Board of Review,* 249 Ill. 481. But the facts in that case clearly distinguish it from the case at bar, and in some respects it is additional authority for our present decision. We there held that a fund donated to a school for the purpose of establishing free scholarships, the income only to be used for that restricted purpose, is exempt from taxation as property of a school not used with a view to profit. The endowment fund there

set apart was used to pay for free scholarships—a gift of value—while in this case a loan to needy students, to be re-paid with interest, cannot be considered in quite the same light. The tax here is not upon the student loan fund but upon the farms, which not only contribute a livelihood to their tenants but also provide the means of creation of the loan fund. We specifically approve that part of our decision in the *Monticello Seminary case* wherein we said: "The fact that the rents and revenues of property are devoted to school purposes does not exempt the property from taxation. The property itself must be directly used for school purposes before it is entitled to be exempted."

The third contention may be readily disposed of by the observation that the university is neither a beneficent nor a charitable organization, and the property is neither actually nor exclusively used for charitable or beneficent purposes. Regardless of what may be said of the use of the income of the farms, the farms themselves, as above indicated, are "leased or otherwise used with a view to profit."

We are also unable to agree with the fourth contention above listed. In the first place, although the farms are used for agricultural purposes, it cannot be denied that they are operated for pecuniary profit—as much so as if the donors had conveyed them to private individuals as trustees to operate them and lend the net proceeds to students. Furthermore, the university is not a "society" within the meaning of the tenth clause of section 2 of the Revenue act, exempting property used exclusively by societies for agricultural purposes and not for pecuniary profit. The legislature clearly did not have in mind that the word "society" should include a State school.

The judgment is affirmed. *Judgment affirmed.*